GINNIFER HENCY, et al.,

          Plaintiffs,

v.

ST. CLAIR COUNTY, et al.,

          Defendants.

                         /

Case No. 2:17-cv-12040

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT [30] AND STRIKING INITIAL VERSION OF THE MOTION [26]**

On June 23, 2017, Plaintiffs filed their complaint under 42 U.S.C. § 1983 and alleged that Defendants: (1) used excessive force in violation of Plaintiffs' Fourth and Fourteenth Amendment rights, (2) entrapped Plaintiffs by estoppel in violation of their due process rights, (3) discriminated against female Plaintiffs on the basis of sex in violation of the Elliot-Larsen Civil Rights Act, (4) maliciously and harassingly destroyed and damaged Plaintiffs' property in violation of Michigan Penal Code § 750.147b, (5) assaulted and battered Plaintiffs, (6) intentionally inflicted emotional distress upon Plaintiffs, (7) failed to supervise and train officers in a grossly negligent manner, (8) took and retained Plaintiffs' property in violation of the Fourteenth Amendment's due process clause, and (9) conspired to interfere with Plaintiffs' civil rights in violation of 42 U.S.C. § 1985. ECF 1, PgID 21–32. Plaintiffs also sought to enjoin Defendant St. Clair County Drug Task Force ("SCCDTF") "from receiving

federal funds, support, equipment or participation from any agency of the federal government." *Id.* at 30.

On September 29, 2017, Plaintiffs voluntarily dismissed Defendant Agent Rogers. ECF 14. On December 12, 2017, the Court granted Defendant Melissa Keyes's motion to dismiss and granted in part and denied in part the remaining Defendants' motion to dismiss. ECF 15. "At the motion hearing, Plaintiffs agreed to voluntarily dismiss Count Nine in its entirety." *Id.* at 303. Plaintiffs claim seeking to enjoin SCCDTF from receiving federal funds has therefore been dismissed. The Court also dismissed the battery claims in their entirety and dismissed the assault claims as to all Plaintiffs except the minor Shattuck Plaintiffs. *Id.* at 305–06.

On February 1, 2019, the remaining Defendants filed their motion for summary judgment on all remaining claims, and, on February 18, 2019, with consent from Plaintiffs, Defendants re-filed their motion in a searchable format. ECF 26, 29, 30. The Court reviewed the briefs closely and finds that a hearing is unnecessary. E.D. Mich. LR 7.1(f). For the reasons below, the Court will grant in part and deny in part the motion and enter partial summary judgment in favor of Defendants. And because the initial motion for summary judgment, ECF 26, was replaced by the re-filed motion, ECF 30, the Court will also strike the initial motion.

## BACKGROUND

There are five adult Plaintiffs in this case—Ginnifer Hency, Dean Hency, Dale Shattuck, Annette Shattuck, and Lori Lee. ECF 1, PgID 4. There are also several minors named as Plaintiffs. *Id.* The remaining Defendants are John Maxey, James

Spadafore, Jason Sklba, Lt. King, Dep. Welch, Dep. Tunich, Dep. Garvin, Dep. Singleton, Dep. Stoyan, Kevin Manns, Dep. Ryan, Det. Black, and John Does—all deputy sheriffs and members of the SCCDTF—as well as St. Clair County Sheriff Tim Donnellon, SCCDTF, and St. Clair County. *Id.* at 5–9.

Annette and Dale Shattuck were both licensed, registered caregivers under the Michigan Medical Marihuana Act ("MMMA")—Dale had four patients and Annette had one. ECF 30, PgID 1314. In March 2014, the Shattucks opened a "Medical Marijuana Compassion Center" called "DNA Alternative Wellness Center" ("DNA Wellness") in Kimball, Michigan. *Id.* at 1315–16. Plaintiffs' claims arise out of searches conducted by Defendants on July 28, 2014, at DNA Wellness, another address associated with DNA Wellness ("5159 Lapeer"), the Hencys' home, and the Shattcuks' home. ECF 1, PgID 11–16. All four searches were conducted pursuant to warrants. *See* ECF 30-12, 30-13, 30-14, 30-15, 30-16, 30-17. Plaintiffs assert nine remaining claims arising from the searches, as outlined above. All Defendants jointly moved for summary judgment. ECF 30.

## LEGAL STANDARD

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must identify specific portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the

pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

All remaining Defendants move for summary judgment on all remaining claims. The Court will therefore address each claim in turn.

I.    Fourth and Fourteenth Amendment Claims

First, Plaintiffs allege several violations of their Fourth Amendment rights, as incorporated through the Fourteenth Amendment. Although they title their first claim only "Violation of Fourth and Fourteenth Amendments (Excessive force)," Plaintiffs allege that Defendants violated their: (a) "[f]reedom from unreasonable seizure," (b) "right to be free from unreasonable searches," (c) "[f]reedom from the use of unreasonable, unjustified and excessive force," (d) "[f]reedom from deprivation of liberty and property without due process of law," (e) "[f]reedom from summary

punishment," (f) "[f]reedom from the prevention of officers from using excessive force," and (g) "[f]reedom from arbitrary governmental activity which shocks the conscience of a civilized society." ECF 1, PgID 21–22.

### A. Failure to Specify Acts of Individual Defendants

Defendants argue that they are entitled to summary judgment based on qualified immunity for the constitutional claims because "Plaintiffs have failed to specify which Defendant engaged in specific conduct that they claim violated their constitutional rights." ECF 30, PgID 1338. When multiple individual defendants assert a qualified immunity defense, the Court must separately assess the allegations and evidence against each defendant. *See Bishop v. Hackel*, 636 F.3d 757, 768 (6th Cir. 2011). And when a plaintiff cannot "identify the specific officers who allegedly engaged in" the unlawful conduct, summary judgment in favor of each individual defendant is proper. *Mobley v. City of Detroit*, 938 F. Supp. 2d 669, 686 (E.D. Mich. 2012).

Here, Plaintiffs fail to specify which individual Defendants undertook which allegedly unconstitutional actions, with a few exceptions that the Court will address below. And in their response to the motion for summary judgment, Plaintiffs do not attempt to remedy their failure to make specific allegations against specific Defendants for their various Fourth and Fourteenth Amendment claims. Instead, Plaintiffs argue that the question of who stole certain items "is up to [the] jury" and imply that they think Officer Sklba may have gone into the Hencys' house, despite citing no evidence for that proposition and admitting that Officer Sklba denied doing

so. ECF 34, PgID 2260–61. Plaintiffs seem to misunderstand the legal standard. As explained above, to survive summary judgment Plaintiffs must identify specific officers that did each allegedly unconstitutional act.

Plaintiffs' only factual allegations regarding the searches in which they list specific conduct undertaken by specific Defendants are that: (1) Officer George posed as a store employee at DNA Wellness, greeted Ms. Hency, and sold marijuana to customers, (2) Officer George and Sergeant Spadafore together searched Ms. Hency's backpack and arrested her, (3) Officer Manns handcuffed Ms. Hency and made an inappropriate comment to her, (4) Deputy Maxey applied for the search warrant for the Hencys' home, and (5) "Sherriff Donnellon and Agent Maxey are also individually liable as supervisors who directly participated in the violations of Plaintiffs' rights." ECF 1, PgID 12–16, 21–22.

But Officer George is not a defendant in the case. And there is no supervisory liability under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). The Court will analyze below the two specific allegations Plaintiffs made against specified individual defendants—that Officer Manns handcuffed Ms. Hency and that Deputy Maxey applied for the search warrant for the Hencys' home—as well as the evidence Plaintiffs have presented of specific conduct by Officer Manns and Sergeant Spadafore. All individual Defendants other than Officer Manns, Deputy Maxey, and Sergeant Spadafore are entitled to summary judgment on Plaintiffs' various Fourth and Fourteenth Amendment claims because Plaintiffs failed to allege or demonstrate

who did what, and "each Government official . . . is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677.

B.     *Deputy Maxey*

Plaintiffs' first specific factual allegation against a specific Defendant regarding the raids is that "Deputy Maxey applied for a Narcotics Search Warrant for Ms. Hency's home[.]" ECF 1, PgID 13. To determine whether Deputy Maxey is entitled to qualified immunity, the question is whether the affidavit failed to establish probable cause and whether "a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345 (1986). An application of that sort would not be objectively reasonable because it would "create[] the unnecessary danger of an unlawful arrest." *Id.*

Here, Deputy Maxey's affidavit supporting the search warrant for the Hencys' home stated his experience that included over twenty years of law enforcement experience and over 700 hours of training in narcotics enforcement and criminal and human trafficking. ECF 30-17, PgID 1594. It then stated that the SCCDTF, of which Deputy Maxey was a member, received information in July 2011 "from the St. Clair County Friend of Court" that the Hencys were "involved in the manufacturing and distribution of [m]arijuana in the St. Clair County area." *Id.* It further stated that in December 2011, the SCCDTF received an anonymous tip "that [Ms. Hency] had just completed a $3000 sale" of marijuana. *Id.* The affidavit next recounted that in July 2013, the SCCDTF was informed that the Hencys' home was "involved in the

production of [m]arijuana," including "information from the Thumb Narcotics Unit that" the Hencys' home housed a "[m]arijuana grow operation." *Id.* at 1595. Based on the above information, the SCCDTF had "applied for and received a valid narcotics search warrant" and executed said warrant in July 2013. *Id.* Based on the 2013 investigation, "Deputy Sklba believed probable cause existed that" the Hencys "were possibly violating the MMMA laws." *Id.*

The affidavit further explained that on July 28, 2014—the day the affidavit was executed—the SCCDTF was executing a narcotics search warrant at DNA Wellness when Ms. Hency arrived with a locked backpack that she told Sergeant Spadafore contained marijuana. *Id.* After Sergeant Spadafore read Ms. Hency her Miranda rights, she stated that she understood them, waived them, and then stated that "she was delivering the marijuana to the facility since she was a caregiver, and could transfer her marijuana to any legal caregiver she wanted." *Id.* She further stated that she had "approximately 6 ounces of marijuana." *Id.* Deputy Maxey stated in the affidavit that he knew such a transfer "to be a violation of the current MMMA laws, specifically being that no patient to caregiver relationship existed between Hency and either Dale or Annette Shattuck, and that no transfer of marijuana can or could take place between these individuals on this date, at this time." *Id.*

The affidavit established probable cause to search the Hencys' home. The Michigan Supreme Court clarified that MMMA "immunity does not extend to a registered primary caregiver who transfers marijuana for any purpose other than to alleviate the condition or symptoms of a specific patient *with whom the caregiver is*

connected through the MDCH's registration process." *State v. McQueen*, 493 Mich. 135, 156 (2013) (emphasis in original). Marijuana sales that do not fall within that limited category violate drug laws, and those who engage in such sales are not immune to prosecution under such drug laws through the MMMA. *See People v. Johnson*, 302 Mich. App. 450, 465–66 (2013); *People v. Amsdill*, No. 334572, 2017 WL 5195841 at *1 (Mich. Ct. App. Nov. 9, 2017). Ms. Hency's alleged admission that she was engaging in a transfer of marijuana to a fellow caregiver was therefore an admission that she was engaging in criminal activity. And combined with the SCCDTF's earlier intel into the grow operation at her house, her alleged admission provided probable cause that evidence of illegal activity existed at her house.

Although (as discussed below regarding her claim for unlawful arrest) Plaintiffs present evidence to create a genuine dispute of material fact over whether Ms. Hency made the statements alleged in the affidavit, Plaintiffs present no evidence that Deputy Maxey—the affiant—knew the information was false or that he displayed a reckless disregard for the truth. *See Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003) (to overcome an officer-affiant's qualified immunity in a § 1983 case, the plaintiff must make "a substantial showing that the [officer-affiant] stated a deliberate falsehood or showed reckless disregard for the truth."). Deputy Maxey is therefore entitled to summary judgment because he is entitled to qualified immunity for the Hencys' unreasonable search claim.

Plaintiffs also present no evidence regarding which officer gave Deputy Maxey the allegedly false information. Ms. Hency testified in her deposition that when her

belongings were being searched and she was being handcuffed, only Officer Manns, Sergeant Spadafore, and Officer George were in the room. ECF 30-27, PgID 1826. But Sergeant Spadafore testified that he "had no hand in writing the search warrant" and does not recall when he conveyed anything that occurred during his interaction with Ms. Hency to Deputy Maxey. ECF 34-4, PgID 2788–89. And Officer Manns testified that he observed Officer George and Sergeant Spadafore interact with Ms. Hency but that he did not personally interact with her or hear the conversation. ECF 34-7, PgID 3446–48. And finally, there is no evidence that Officer George—a non-party in the case—was deposed. Even assuming the same standard for purposefully or recklessly untrue statements of an affiant can be applied to other officers who speak to an affiant, Plaintiffs have not provided evidence demonstrating which officer made the allegedly untrue statements to Deputy Maxey that he included in the affidavit.

C. *Officer Manns and Sergeant Spadafore*

Plaintiffs' second specific factual allegation against a specific Defendant regarding the raids is that Officer Manns handcuffed Ms. Hency's hands behind her back and called her "Big Tits Gin." ECF 1, PgID 13. The comment is not relevant to the Fourth and Fourteenth Amendment claims listed above but will be addressed below when the Court addresses Plaintiffs' Elliot-Larsen Civil Rights Act Claim. But there is a genuine dispute over whether Ms. Hency stated that she was at DNA Wellness to trade marijuana with the Shattucks. Ms. Hency stated in her deposition that she told the officers only that she had six ounces of marijuana in her locked backpack, and the officers saw her caregiver card. Thus, no probable cause existed to

arrest her. *See* ECF 30-27, PgID 1823–26 (Ginnifer Hency Deposition). Whether she stated an intent to transfer her marijuana to the Shattucks is immaterial to whether the officers had probable cause to arrest her: if Ms. Hency's version of events is true then there was no probable cause to arrest her.

But Plaintiffs present no evidence that it was Officer Manns who handcuffed Ms. Hency. They instead present evidence that it was Sergeant Spadafore who handcuffed Ms. Hency. *See id.* at 1823 ("I think it was Spadafore that put me in cuffs"), 1823–24 (stating that Sergeant Spadafore put his forearm on her breast to push her against the wall and then handcuffed her); *see also* ECF 34-8, PgID 3545 (affidavit in support of the search warrant for the Hency home, listing Sergeant Spadafore as the officer who questioned Ms. Hency about the marijuana in her backpack). Officer Manns is entitled to summary judgment on Ms. Hency's claim for unlawful seizure of her person because, despite the initial allegations in the complaint, there is no evidence that he was the arresting officer. Ms. Hency has, however, established a genuine dispute of material fact as to whether Sergeant Spadafore unlawfully arrested her. Sergeant Spadafore is therefore not entitled to summary judgment on Ms. Hency's claim of unlawful seizure of her person.

### D. Officers Present During the Raids

Finally, as discussed above, Plaintiffs fail to provide allegations or evidence specifying which officer engaged in what conduct during the raids for purposes of their excessive force claims and claims that the searches exceeded the scope of the search warrants. To the extent that Plaintiffs provide evidence that certain officers

were merely present during and participated in one or more of the searches, the officers are entitled to summary judgment based on qualified immunity. Each search was conducted pursuant to a search warrant. *See* ECF 30-12, 30-13, 30-14, 30-15, 30-16. None of the warrants were facially invalid. *Id.* As discussed above, at the time of the raids, any transfer of marijuana outside the caregiver to that specific caregiver's registered patient relationship was illegal.

And to the extent that there is a genuine dispute of material fact regarding whether the affidavit for the search warrant of the Hency home contains a false statement, Plaintiffs have not presented evidence demonstrating that any officer present at the search of the Hency home had reason to know that the statement in the search warrant affidavit was false. Plaintiffs cannot therefore demonstrate that the actions of the executing officers were unreasonable. *See, e.g., Sample v. Bailey*, 409 F.3d 689, 700 (6th Cir. 2005) (the final step of the qualified immunity analysis is whether an officer's actions were objectively unreasonable).

As to the blank magistrate judge signature line on the search warrant for the Hency home, the magistrate judge signed each page of the affidavit and each page of the search warrant. *See* ECF 30-16. The judge at the criminal trial, after holding an evidentiary hearing at which the magistrate judge testified, determined that the warrant was valid. ECF 30-31, PgID 1937–38, 1942–43. Plaintiffs cannot demonstrate that the executing officers' actions were unreasonable because of the one missing signature.

The only specific Fourth and Fourteenth Amendment claim that survives Defendants' motion for summary judgment is therefore Ms. Hency's claim for unlawful seizure of her person against Sergeant Spadafore.

II.  Entrapment by Estoppel Claim

Second, Plaintiffs allege that Defendants violated their "[d]ue [p]rocess rights to be free from [e]ntrapment by [e]stoppel." ECF 1, PgID 22.[1] As a threshold matter, entrapment by estoppel is a defense to criminal prosecution based on due process concerns. *See United States v. Blood*, 435 F.3d 612, 626 (6th Cir. 2006). It is unlikely that a § 1983 claim can be brought against officers for entrapment by estoppel. But, even assuming that a civil cause of action for entrapment by estoppel exists, Plaintiffs' entrapment by estoppel claim fails.

The entrapment by estoppel claim appears to be brought by Dale and Annette Shattuck, given that their criminal charges were dismissed based on an entrapment by estoppel defense. ECF 30, PgID 1347. The criminal defense of entrapment by estoppel requires the Court to conclude that: (1) the Government "announced that the charged criminal act was legal," (2) "the defendant relied on" the announcement, (3) "the defendant's reliance was reasonable," and (4) "given the defendant's reliance, the prosecution would be unfair." *United States v. Levin*, 973 F.2d 463, 468 (6th Cir.

---

[1] Plaintiffs only reference to their entrapment by estoppel claim in their response to the motion for summary judgment is an indecipherable footnote. *See* ECF 34, PgID 2259 n.4. The footnote appears to indicate that Plaintiffs do not seek to prosecute entrapment by estoppel as a separate civil claim but rather to use the legal theory of entrapment by estoppel as evidence in support of their Fourth Amendment claims. Because it was asserted as a separate claim in the complaint, the Court will nonetheless address it separately here.

1992). Plaintiffs' estoppel by entrapment allegations are vague. *See* ECF 1, PgID 23 ("Plaintiffs reasonably relied on a government agent's representation that certain conduct was legal, such that prosecution would be unfair under the circumstances."). There are therefore two plausible situations to which Plaintiffs' estoppel by entrapment claim may refer. First, it may refer to the fact that Kimball Township "approved the license" for DNA Wellness and, after inspection, declared it "fully compliant." *Id.* at 10. Second, it may refer to Plaintiffs' allegation that "Detective Jason Sklba assured Annette Shattuck that they had nothing to worry about as they were not on the [SCCDTF's] radar, and further told her that Deputy Maxey would be in touch with her if there were any issues." *Id.* at 11. But there is no genuine issue of material fact regarding either situation, and Defendants are entitled to judgment as a matter of law for both.

As to the SCCDTF, Dale Shattuck testified that Annette spoke with an officer only after DNA Wellness was already open. ECF 30-2, PgID 1384. He also admitted that he could not hear what the officer said to Annette. *Id.* And although Annette could not recall whether DNA Wellness was already open or not when she spoke with Officer Sklba—the one SCCDTF officer she spoke with—she testified that he told her "you're not on our radar. I'll pass your information along to the weed guy. He handles this type of thing. If there are any problems, we'll let you know." ECF 30-3, PgID 1443.

Based on the Shattucks' testimony, there is no genuine dispute of material fact that any SCCDTF officer announced or made a representation to the Shattucks that

it was legal to sell marijuana to persons not registered as their patients. If the phone call with Officer Sklba was the basis of the entrapment by estoppel claim, Defendants are entitled to summary judgment.

As to Kimball Township, Dale Shattuck testified at his deposition that the zoning board that approved DNA Wellness as a business "had nothing to do with" rules regarding who he could sell marijuana to and that the topic was never discussed with the zoning board. ECF 30-2, PgID 1379. He further testified that whether he would be selling marijuana to persons other than his registered patients "never came up" with Kimball Township. *Id.* at 1383. Annette Shattuck, however, testified in her deposition that she told Kimball Township that she would be selling to patients not connected to her through the registry. ECF 30-3, PgID 1435.

Annette Shattuck indicated that she told Kimball Township that she would sell to persons not registered as her patients and the Township nonetheless approved her business. But even assuming Kimball Township's approval of DNA Wellness after Annette Shattuck told them she would sell to persons other than her registered patients qualifies as the Township announcing that doing so was legal, the Shattucks present no evidence that any Defendant knew or had any reason to know that she made that representation to Kimball Township. The Defendants are St. Clair County, SCCDTF, and officers thereof, not representatives of Kimball Township. Plaintiffs have presented no reason why Defendants would know what Annette Shattuck said at one township meeting during DNA Wellness's approval process. And absent any allegation or evidence that a Defendant knew that Annette Shattuck specifically told

Kimball Township that she would sell to persons not registered as her patients during the approval process, Plaintiffs cannot demonstrate that Defendants acted unreasonably when arresting the Shattucks for illegal conduct under an entrapment by estoppel theory. Defendants are therefore entitled to summary judgment based on qualified immunity on Plaintiffs' entrapment by estoppel claim.

III.   Elliot-Larsen Civil Rights Act Claim

Third, the female Plaintiffs allege that Defendants discriminated against them on the basis of sex by sexually harassing them in violation of the Elliot-Larsen Civil Rights Act ("ELCRA"). ECF 1, PgID 24. Under the ELCRA, "[a] person shall not: (a) [d]eny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of . . . sex[.]" Mich. Comp. Laws § 37.2302; *see also Hamed v. Wayne Cty.*, 490 Mich. 1, 9 n.17 (2011) (listing Mich. Comp. Laws § 37.2302 as the relevant provision under which a person could bring a claim for unlawful discrimination within a public service or public accommodation context). Sex discrimination prohibited by the statute "includes sexual harassment," which in turn includes "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature" that "has the purpose or effect of substantially interfering with an individual's . . . public accommodations or public services . . . or creating an intimidating . . . public accommodations [or] public services . . . environment." *Hamed*, 490 Mich. at 9 (quoting Mich. Comp. Laws § 37.2103(i)).

Although the female Plaintiffs provide evidence of sexual harassment by members of the SCCDTF, there is no allegation or evidence that any of the alleged harassment led to a denial of the female Plaintiffs' "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of . . . [a] public service." Mich. Comp. Laws § 37.2302. And the Michigan Supreme Court decided, in *Kassab v. Mich. Basic Prop. Ins. Ass'n*, 441 Mich. 433, 439–441 (1992), *overruled on other grounds*, "that where a complaint did not allege denial of access to public services or accommodations, it was beyond the scope of the legislative purpose underlying the Civil Rights Act to provide redress to the plaintiff." *Wilson v. City of Detroit*, No. 219777, 2001 WL 760020, at *2 (Mich. Ct. App. Jan. 30, 2001).

Further, the Michigan Court of Appeals has denied claims regarding unconscionable conduct by public service personnel where the plaintiff failed to allege a resulting denial of access to a public service. *See Dockweiler v. Wentzell*, 169 Mich. App. 368, 369–75 (1988) (holding that the plaintiff, who alleged that her psychologist at a county mental health services provider repeatedly sexually harassed and assaulted her, failed to state a claim under the ELCRA because her allegations did not link the sexual harassment and assaults to her "receipt of public services"); *see also Wilson*, 2001 WL 760020, at *3 (holding that the plaintiff failed to adequately allege an ELCRA claim based on public service discrimination where she did not "allege that the conduct had the purpose or effect of substantially interfering with her access to public accommodations or services").

The female Plaintiffs allege, and provide evidence supporting their allegations, that Sergeant Spadafore referred to Ms. Hency as "Big Tits Gin," that he pressed his arm against her breasts as he pushed her to the wall in order to handcuff her, and that an unknown officer or officers inappropriately dealt with sexual items during the searches of the homes, including by hanging up Ms. Hency's daughter's underwear and spreading Ms. Hency's lubricant around her daughter's room. But no matter how inappropriately the officers dealt with the sexual objects they encountered during the search or how offensively Sergeant Spadafore treated Ms. Hency, Defendants' conduct did not deprive the female Plaintiffs of a public service. The female Plaintiffs do not allege or provide evidence demonstrating that their allegedly criminal conduct was dealt with any differently than the male Plaintiffs' conduct or that they ever sought and were denied based on sex any form of protection by Defendants.[2] The ECLRA is therefore not an appropriate vehicle for the female Plaintiffs' claims, and the Court will grant summary judgment in favor of Defendants on the ELCRA claim.

IV.    Assault Claim

Fourth, Plaintiffs allege that Defendants assaulted the minor Shattuck Plaintiffs by ordering them about at gunpoint and threatening to kill their dog. *See* ECF 15, PgID 306 (permitting Plaintiffs to move forward on the above-stated assault claim and dismissing all other assault and battery claims). But now that the parties

---

[2] Notably, Plaintiffs fail to even address their ECLRA claim in their response to Defendants' motion for summary judgment. *See generally* ECF 34.

have developed the factual record, there is no genuine dispute of material fact regarding the above-alleged actions, and Defendants are entitled to judgment as a matter of law on the remaining assault claim. Kaylee Shattuck testified that no one ever pointed a gun at her during the raid and that she does not remember an officer saying anything about her dog. ECF 30-29, PgID 1920–21. And Gavin Shattuck testified that he doesn't remember whether any of the officers pointed a gun at him or whether they said anything to the dog. ECF 30-30, PgID 1930–31. There is no evidence in the record that the other Shattuck children were deposed.

Plaintiffs attempt to rebut Defendants' summary judgment argument by pointing to Lori Lee's deposition testimony. ECF 34, PgID 2263–64. Lori Lee is the Shattuck children's grandmother, who was present with them in the Shattuck home during the raid. ECF 34-10, PgID 3561, 3616–17. But Lori Lee's testimony does not provide evidence of an assault on the Shattuck children—the only Plaintiffs whose assault claims have not already been dismissed. Lori Lee testified that officers pointed guns at the dog and that she was "afraid they were going to shoot the dog." *Id.* at 3624. She further testified that she thinks an officer pointed a gun at her one time. *Id.* at 3625. But she also testified that the children were in another room when all of this occurred. *Id.* at 3622–23. There is therefore no evidence that the children were put in fear of the dog being shot or of themselves being shot. Because there is no evidence supporting the only remaining assault claim, there is no genuine dispute of material fact regarding that claim, and Defendants are entitled to judgment as a matter of law.

V.    <u>Other State Law Claims</u>

Fifth, Plaintiffs allege ethnic intimidation and intentional infliction of emotional distress, in violation of Michigan state laws. ECF 1, PgID 24, 25. But claims that allege misconduct by a sheriff or sheriff's deputy are governed by a two-year statute of limitation. *See Hoxie v. Livingston Cty.*, at \*2–3 (E.D. Mich. July 9, 2009); *see also* Mich. Comp. Laws § 600.5805(9). Defendants' alleged misconduct occurred on July 28, 2014. *See, e.g.*, ECF 1, PgID 12. And the complaint was filed on June 23, 2017. ECF 1. Plaintiffs' ethnic intimidation and intentional infliction of emotional distress claims are therefore time-barred.

Plaintiffs attempt to challenge the applicability of the statute of limitations and the accrual date of their claims solely by arguing what statute of limitations ought to apply to a § 1983 claim. But Defendants argue that Plaintiffs state law claims—not their § 1983 claims—are barred by the two-year statute of limitations. And Plaintiffs' arguments regarding when their injuries accrued are misplaced not only because they rely on § 1983 caselaw, but also because that caselaw does not stand for the proposition for which they cite it. For example, *McCune v. City of Grand Rapids*, 842 F.2d 903, 906–07 (6th Cir. 1988) explicitly held that while a malicious prosecution claim does not accrue until the criminal case is adjudicated, claims like false arrest accrue at the time of the arrest. *McCune* also addresses the Michigan tolling statute and notes that it only applies to persons who are incarcerated when their claims accrue and only allows them one year after release to bring a claim that would otherwise be time-barred. *Id.* (citing Mich. Comp. Laws § 600.5851).

Here, it is Defendants' allegedly unlawful conduct during the July 28, 2014, raids that gives rise to Plaintiffs' state-law ethnic intimidation and intentional infliction of emotional distress claims. The alleged harms were complete on that date, and the claims therefore accrued on that date. Plaintiffs do not bring a malicious prosecution claim—a claim that would not accrue until the date on which the charges were dismissed. And no Plaintiff remained incarcerated beyond the day after the raids, so Michigan's tolling statute does not apply. The Court will therefore grant Defendants' motion for summary judgment on Plaintiffs' ethnic intimidation and intentional infliction of emotional distress claims.

VI.    Takings Claim

Sixth, Plaintiffs allege that Defendants took and retained their property in violation of the due process clause of the Fourteenth Amendment. ECF 1, PgID 29. But when state remedies exist that "could have fully compensated [a plaintiff] for the property loss sustained," the state remedies are "sufficient to satisfy the requirements of due process." *Victory v. Walton*, 721 F.2d 1062, 1064 (6th Cir. 1983). And plaintiffs may not invoke § 1983 for takings claims without "showing that state remedies are deficient" because permitting plaintiffs to do so "would almost necessarily result in turning every alleged property deprivation resulting from a criminal investigation or prosecution in which the property of citizens is retained by the state for evidentiary purposes into a section 1983 action." *Id.*

Michigan has multiple state remedies. *See Fox v. Van Oosterum*, 176 F.3d 342, 349 (6th Cir. 1999) (noting that "a state civil tort remedy for conversion and the Claim

and Delivery procedure set out in Michigan Court Rule 3.105" are two "readily apparent" state remedies in Michigan). Plaintiffs make no effort in any of their pleadings to argue that the available state remedies are inadequate. Defendants are therefore entitled to summary judgment on Plaintiffs' takings claim.

VII.   *Monell* Claims

Seventh, Plaintiffs allege that Defendants engaged in "grossly negligent failure to supervise and train" based on a "custom, policy and procedure." ECF 1, PgID 25. The claim appears to be brought against St. Clair County, SCCDTF, or Sheriff Donnellon in his official capacity. *See Monell v. Dept. of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–91 (holding that municipalities are persons who can be held liable under 42 U.S.C. § 1983 but that they can be held liable only for "action pursuant to official municipal policy of some nature" which caused the injury); *see also Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989) (a suit brought against a sheriff in his official capacity is functionally "a suit against a governmental entity," and therefore a *Monell* claim may be brought against a sheriff in his official capacity).

The "first inquiry in any case alleging municipal liability under § 1983 is . . . whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Although it was unclear in the complaint, the municipal policy or custom that Plaintiffs appear to allege here, as fleshed out in their response to Defendants' motion to dismiss, is that Defendants St. Clair County, the SCCDTF, and Sheriff Donnellon, in his official capacity, failed to adequately train individual Defendants regarding the

MMMA and how to address and investigate MMMA-related issues. *See generally* ECF 34. For failure to train claims, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. But the Court need not reach the question of whether Plaintiffs have alleged or provided any evidence of deliberate indifference, because the *Monell* claim fails under *City of Canton*'s "first inquiry."

Plaintiffs argue that Defendants were not trained on and did not adequately understand the contours of the MMMA. The tie-in to the alleged constitutional deprivations here would be that Defendants' lack of knowledge of the MMMA led them to unreasonably search DNA Wellness and the related raided properties as well as to unreasonably arrest Plaintiffs. But as noted above, Plaintiffs' understanding of the MMMA and *McQueen* is misguided. Any transfer of marijuana between any two persons was illegal at the time of the raids except a transfer from a caregiver to a patient who was registered as that caregiver's patient. Dale Shattuck admitted that more than half his sales at DNA Wellness were to persons outside that relationship. ECF 30-2, PgID 1381. More than half of his sales were therefore illegal drug transactions. It was not any misunderstanding that could have resulted from a failure to train the officers about the MMMA that led to the investigation into DNA Wellness, the raids of it and related properties, and the arrests of Plaintiffs. Defendants' actions instead demonstrated a proper understanding of the MMMA.

As to Defendants' arrest of Ms. Hency and the later search of her house, there is also a missing link between Plaintiffs' failure to train theory and the alleged constitutional deprivations. Taking the evidence in the light most favorable to Plaintiffs, the Court determined that Ms. Hency's claim for unlawful seizure of her person survives summary judgment. But, even assuming, as the Court must at summary judgment, that Ms. Hency's version of events is true and that she did not tell the officers that she was delivering marijuana to Dale and Annette Shattuck or trading marijuana with them, a failure to train theory still fails. The officers included in the search warrant affidavit for the Hency home that Ms. Hency said she was delivering the marijuana to DNA Wellness "since she was a caregiver, and could transfer her marijuana to any legal caregiver she wanted." ECF 30-17, PgID 1595. If, as Ms. Hency alleges, she never made the above statement to the officers at DNA Wellness, then their fabrication of the incident in the search warrant affidavit evidences a proper understanding of the MMMA. Ms. Hency's stated intention to transfer her marijuana to a fellow caregiver would establish probable cause of an illegal drug transaction; her mere possession of an amount she could lawfully possess as a caregiver would not. There is therefore no genuine dispute of material fact regarding a causal link, and Defendants are entitled to summary judgment on the *Monell* claim.

VIII.   Conspiracy to Interfere with Civil Rights

Finally, Plaintiffs allege that Defendants conspired to interfere with their civil rights in violation of 42 U.S.C. § 1985. Although the Court is skeptical about the

merits of the claim, Defendants fail to address the claim in their motion for summary judgment. As noted above, at the time of the raids, the conduct to which Dale Shattuck admitted made up more than half of DNA Wellness's business—transferring marijuana to persons other than those specifically registered as the provider's patients under the MMMA—was illegal. It is also unclear to the Court what "class-based discriminatory animus" Plaintiffs allege was "behind the conspirators' action." *Dunn v. State of Tennessee*, 697 F.2d 121, 124 (6th Cir. 1982) (citations omitted). But because the moving party bears the burden of pointing to specific portions of the record that demonstrate a lack of a genuine dispute of material fact, the Court cannot grant summary judgment in favor of Defendants on a claim that their motion failed to address. *See, e.g.*, *Peake v. Nat'l City Bank of Michigan*, No. 05-72520, 2007 WL 951417, at *2–3 (E.D. Mich. Mar. 27, 2007) (when a party seeks summary judgment on an entire case but fails to address the merits of a particular claim in its motion, summary judgment is not appropriate as to that claim). The Court must therefore deny summary judgment as to the conspiracy claim.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion for summary judgment [30] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that all claims except: (1) Plaintiff Ginnifer Hency's claim against Defendant James Spadafore for unlawful seizure of her person, and (2) Plaintiffs' claim for conspiracy to interfere with civil rights, are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the initial motion for summary judgment

[26] is **STRICKEN**.

**IT IS FURTHER ORDERED** that the final pretrial conference date is

**RESET** for **November 19, 2019**, at **2:00 p.m.**, and the trial date is **RESET** for

**December 2, 2019**, at **8:30 a.m.**

**SO ORDERED.**


s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: September 24, 2019

I hereby certify that a copy of the foregoing document was served upon the parties
and/or counsel of record on September 24, 2019, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager